Eastern District of Kentucky
**F I L E D**

MAY 1 0 2022

AT FRANKFORT
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

LEWIS, MICHAEL THOMAS )
          Plaintiff, )
vs. )
     )
PENNSYLVANIA HIGHER )
EDUCATION ASSISTANCE AGENCY )
("PHEAA"), & EDUCATIONAL )
CREDIT MANAGEMENT )
CORPORATION GROUP, INC )
("ECMC"). )
          Defendant(s) )

CASE NO. 3:22-CV-25-DLB

HUMAN TRAFFICING AND
CIVIL RICO COMPLAINT AND
JURY TRIAL DEMAND

JUDGE_____.

## COMPLAINT

Comes now Michael T. Lewis (Henceforth also referred to as the "Plaintiff", "I", "me" & "my") and brings forth this complaint that alleges the following upon my knowledge as to my created documents and actions and that of Pennsylvania Higher Education Assistance Agency, (Henceforth also referred to as "PHEAA"), Educational Credit Management Corporation Group, Inc., (Henceforth also referred to as "ECMC"). (Henceforth ECMC and PHEAA are also collectively referred to as "Defendant" or "Defendants"), the Defendants as corporate entities, the Defendants as corporate person associates that are a part of a group of organized crime enterprise associates and the Defendants organized crime enterprise associated employees, agents, corporate entities, cooperate persons, other natural persons, corporate group entity associates and any other known or unknown corporate entities or person associates for whose actions the Defendants have liability, vicarious liability and or respondeat superior liability for and any other persons or entities that form other parts of the organized crime enterprises group of associates, documents and actions that violates the relevant statutes under 18 U.S.C. § Chapter 96 - Racketeer Influenced and Corrupt Organization Act (Henceforth also referred to as "Rico" or "Racketeering"), 18 U.S.C. § Chapter 77 - Peonage, Slavery, And Trafficking in Persons, (Henceforth also referred to as "Human Trafficking" and "Trafficking") and statue 18 U.S.C. § 2 – Aiding and Abetting Human Trafficking.

## INTRODUCTION

These allegations arise from a scheme and plan initially formed by Nelnet and the Defendants, in their rolls and capacities, as financially liable legal corporate entities and their associates in crime, to commit, attempt, aid and abet and conspire to commit human trafficking and by a core group of enterprise group associates in fact that includes Nelnet and the Defendants in their rolls and capacities as financially liable corporate person associates that are a part of an organized criminal enterprise group of associates, although not a legal entity, and in their rolls and capacities as financially liable conspiring corporate person associates that are a part of an organized criminal enterprise group of associates, although not a legal entity, to knowingly, were relevant, and directly or indirectly manage by conducting or participating in the operations of an organized criminal enterprises creation, propagating, and collections on an unlawfully debt and usurious interest by means of a pattern of racketeering predicate activities, which includes human trafficking. Where the Defendants and their group associates have a documented meeting of the minds as to the means, through overt criminal predicate activities, methods, through abuse of Federal Government processes, and justification, through abuse of law and abuse of their positions of trust, to forcefully and coercively accomplish the common organized crime enterprise predatory functions of human trafficking, racketeering, constitutional violations, civil rights violations and common purposes that are to personally and financially injure Federal government funded program participants, which is me in this case, and financially benefit the group associates from that predatory criminal activity.

The evidence establishes that the Defendants and their group associates' unlawful scheme and plan are derived from and executed pursuant to the enterprise group associates created and unlawful policies, practices, and procedures that are forceful, coercive, abuse laws, abuse legal processes and which forms the informal enterprises group associates code of conduct. Which is the Defendants and their group associates customary, common and current away of participating in and conducting their business that, not all inclusive, subverted the Defendants and their associates legitimate federally contracted and other purposes and proliferates and implements, not all inclusive, the enterprise group associates practices rather than adherence to U.S. Supreme Court's precedence, congresses authority and the rule of law, for example, by the Defendants and their group associates falsely asserting

authority over bankruptcy property subject matter where "[b]ankruptcy courts have exclusive jurisdiction over a debtor's property" See, Hood, 541 US., at 447, also see, United Student Aid Funds, Inc. v. Espinosa, 559 US. (2010), the enterprise group associates procedures rather than adherence to constitutional and statutory due process, for example, the Defendants and their associates abusing the Federal Government bankruptcy claims process, Department of Education wage garnishment processes and tax claims processes rather than adhere to congresses statutory due process for bankruptcy discharge disputes and resolution where "A case may be reopened in the court in which such case was closed to administer assets, ...., or for other cause." as referenced PX 34 - Federal Statutes - U.S.C § 350, and the enterprise associates policies in place of adherence to congressional intent, congressional definitions, Federal regulations, statutory laws and other common laws, for example the Defendants and their associates deliberately ignoring that my FFEL loan bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived", as referenced PX 34 - Federal Statutes - 11 U.S.C § 524. Where the pattern and differences in lawful and unlawful activities are numerous, defined, documented, cognizable, and triable by jurists.

The evidence establishes that part of the Defendant and their group associates scheme and plan was and is to conceal and attempt, conspire, succeed or aid and abet accomplishing human trafficking and racketeering human trafficking to obtain me or provide me to be a human trafficking victim for the Defendant and their group associates, through a common plan of, not all inclusive, abusing Federal government processes, relevant to this case, bankruptcy court claims processes, Department of Education wage garnishment hearing process, Federal civil court processes, Federal Tort Claims Act (henceforth also referred to as "FTCA") determination process, and Department of the Treasury and or Internal Revenue Service processes, by abusing Federal statutory and other common laws by means of documented negligent, wrongful, or intentional acts or omissions about, not all inclusive, bankruptcy statute application, bankruptcy process requirements and student loan qualifications for statute 11 U.S.C § 523(a)(8), and by means of force and coercion, through documented and committed negligent, wrongful, or intentional acts or omissions of relevant facts, U.S Supreme Court rulings, congressional definitions, statutory

or other common laws, regulations, and congressional intent that successfully placed me into and continues to hold me in a condition of peonage, debt bondage and at times forced labor, so that the Defendants and their associates can unlawfully justify, under color of official right and law, securing criminally derived property from me and by means of my forced labor.

The evidence establishes that part of the Defendant and their associate's scheme and plan was and is to knowingly conceal and conspire to or succeed in directly or indirectly, conducting or participate in the creation, propagation and collections on an unlawful debt and usurious interest, by means of a pattern of racketeering predicate acts that includes human trafficking. These unlawful predicate acts initially placed me into a condition of peonage and debt bondage to the enterprise group associates by means of Nelnet, PHEAA and group associates fabricating an unlawful debt and usurious interest to collect on by filing and receiving a court order on false bankruptcy claims, also filed for money laundering and tax evasion purposes, so that the Defendants or their associates can justify securing criminally derived property from me and launder the ill-gotten gains through their entities, under color of official right and law. The Defendants and their group associate's collection on the unlawful created debt and usurious interest was eventually accomplished by means of the documented and recognized predicate acts of, not all inclusive, loansharking, extorting me and my employer, by threat, fear or under color of official right and by defrauding the United States and me through the submission of a false claim or receiving money from a false claim submitted to the Department of the Treasury or Internal Revenue Service for money laundering and tax evasion purposes. To facilitate, aid and abet the group associates trafficking in me and racketeering pecuniary purposes, the Defendants and their group associates also conducted and participated in a pattern of predicate acts of mail fraud, wire fraud, obstruction of justice during official proceedings, witness tampering and evidence tampering that also conceals and furthers the enterprises existence and purpose. These listed and recognized predicate acts committed by the Defendants and their associates form a pattern of racketeering activities with a common unlawful pecuniary purpose and victim, which is me.

The evidence establishes that part of the Defendant and their associate's scheme and plan was and is to commit threatening, fraudulent, forceful, coercive, and intimidating overt and predicate acts, under color of official right

and law, to violate and deny basic constitutional rights, civil rights, and Federal protections to a class of Federal protected activities participants, including me. These rights and protections include Federal bankruptcy statutory due process and protections, civil court due process, Federal loan guarantees, Department of the Treasury or Internal Revenue services and protections, Department of Justice services and protections and the most fundamental right not to be enslaved. The Defendants constitutional and civil rights violations and class based animus, directed at a specific class of statutory protected Federally activity participants, including me, occur so that the Enterprise associates can conceal the enterprises existence and unlawful activities, further the enterprises unlawful human trafficking and racketeering pecuniary purposes, receive criminally derived property from the Enterprises human trafficking and predicate acts and is used to induce and recruit additional enterprise group associates that create, proliferate and collect on the unlawfully debts and usurious interest in which, had the Defendants and their associates acted without animus, lawfully and in the interests of the Federally funded programs or its participants, pursuant to their contracts, congressional intent, due process and statutory or other common law, would not have otherwise been created. This is a subtle modern-day form of slavery and animus towards a protected group of individuals by documentation and under color of law and official right, that is recognized under the Trafficking Victims Protection Act (henceforth also referred to as "TVPA")

As a direct result of, by reason of and because of the Defendants and their associates documented human traffic, collection on an unlawful debt, pattern of racketeering predicate activities and constitutional and civil rights violations, the Defendants and their group associates were successful in adversely affecting interstate commerce, by means of their created documents, that are submitted as evidence here, that were sent through the mail or by wire and that unlawfully denied me property and seized my property by facilitating, aiding and abetting the Defendants and their associates trafficking in me, pattern of racketeering activities and collections on the unlawful debt and usurious interest from me, my employer and the Federal Government on multiple documented occasions.

As a result of, by reason of and because of the Defendants and their associates documented human trafficking and racketeering activities, I directly sustained property loss by the Defendants and their associates human trafficking overt acts and racketeering predicate acts inclusive of them filing false claims

for money laundering purposes and other fraudulent documents in bankruptcy and civil court proceedings on multiple occasions, filing or collecting on a false claim with the Department of the Treasury or Federal Internal Revenue Service on 1 occasion, by fraudulently denying me a rightful money transfer of property upon a civil jury's findings on multiple occasions, loansharking on at least one occasion and extorting, by fear, threat, or under color of official right, my property from me and my employer, on 29 occasions.

The Defendants are liable to me as their and their group associates victim, for my property loss and punitive damages under statute 18 U.S.C. § 1595 where the Defendants and their group associates conspired to, attempted, aided and abetted or succeeded at trafficking in me or knowingly benefiting, financially or by receiving anything of value from participation in a human trafficking venture which that person knew or should have known has engaged in a human trafficking act and have liability, vicarious liability and or respondeat superior liability for, knowing, through direct, indirect, imputed, or collective knowledge, that their employees or agents were attempting, conspiring to, aiding and abetting or successfully trafficking in me or where knowingly benefiting financially or by receiving anything of value from participation in a human trafficking venture which that person knew or should have known has engaged in a human trafficking act.

The Defendants are liable to me as their and their associates victim and for treble my property loss under statute 18 U.S.C. § 1964 for committing and conspiring to commit statue 18 U.S.C. § 1961 defined predicate acts, that are recognized violations of statutes 18 U.S.C. § 1962(c) & (d) and that interfered with interstate commerce, and have liability, vicarious liability and or respondeat superior liability for the unlawful conspiring or successful racketeering activities of their associate employees and agents, knowing, through direct, indirect, imputed, or collective knowledge that their associate employees or agents committed and conspired to commit statue 18 U.S.C. § 1961 defined predicate acts, that are recognized violations of statutes 18 U.S.C. § 1962(c) & (d) and that interfered with interstate commerce.

## NATURE OF PROCEEDING AND STATEMENTS

1.   This Complaint incorporates, as if so, stated herein, those salient statements in the concurrently filed and combined Memorandum of Law in Support of the Complaint and Human Trafficking and Rico Case Statement, necessary to establish

proof, plausibility, legal justification, and any other reason, that might arise, that facilitates the Plaintiffs prosecution of this case, in keeping with the standing order recognized by Frank v. D'Ambrosi, 4 F.3d 1378, 1380 (6th Cir. 1993).

2.     Congress has given recognition in statutes under 18 U.S.C. § Chapter 96 - Racketeer Influenced and Corrupt Organization Act to the Defendants and their group associates directly or indirectly conducting or participating in prohibited Rico activities, or conspiring to do so, that are recognized under statute 18 U.S.C. § 1961 – Definitions and are violations of statutes 18 U.S.C. § 1962(c) & (d) - Prohibited Activities and Conspiracy. The documented evidence, submitted and detailed in this complaint, the case statement and memorandum, establishes that the Defendants and their group associates conspire to, conduct by managing and participate in the operations of an ongoing organized crime Enterprise business of lending money and servicing loans that was successful in traffic in me, adversely affecting interstate commerce, collecting on an enterprise group associates created unlawful debt and usurious interest from me, my employer and the Federal Government and did so by means of a documented pattern of racketeering predicate acts that were also violations of my, as a victim, constitutional and civil rights.

3.     Congress has given recognition to the Defendants and their group associates attempting, aided and abetted, conspiring to do so and succeeding in severe forms of trafficking in persons activities by coercive, forceful and under color of official right and law overt acts that are recognized in statutes under 18 U.S.C. § Chapter 77 - Peonage, Slavery, And Trafficking in Persons and, in relevant part, by the TVPA. The submitted and detailed evidence establishes that the principal parties, the Defendants trafficked in me by providing me to and obtaining me for them and their enterprise group associates to traffic in by means of placing, holding and eventually returning me to a condition of peonage, debt bondage, and on occasion forced labor through knowingly aiding and abetting and other direct or indirect documented overt and predicate acts of, not all inclusive, filing false claims for money laundering and tax evasion purposes, fraud, perjury, suborning perjury, committing fraud upon the court, abusing laws, abusing legal processes, legal coercion, threats of legal coercion, loansharking and extortion, by threat, fear or under color of official right, in violation of 18 U.S.C. § 1590(a), § 1594(a), § 1594(b), § 1581(a), § 1589 and § 2.

4.     Based upon the preponderance of the evidence submitted and detailed in the

complaint, case statements and memorandum, where the burden of proof in a civil RICO lawsuits for equitable relief is by a preponderance of the evidence, and under the documented circumstances, Congress empowers me, as a victim and witness, to file these allegations for compensatory and punitive damages relief for damages I have sustained as a result of, by reason of, or because of the Defendants and their group associates trafficking in me under statute 18 U.S.C. § 1595 – civil remedy and for treble compensatory relief for property loss I have sustained under statute 18 U.S.C. § 1964 – civil remedy, as a result of, by reason of, or because of the Defendants and their associates collection on an unlawful debt and usurious interest and by means of a pattern of racketeering activities that directly or proximally caused my property loss.

5.    As a result of, by reason of and because of the Defendants and their associates unlawful activities I directly sustained property loss by means of various human trafficking activities, racketeering activates, constitutional violations, and civil rights violations inclusive of loansharking, extortion, by threat, fear or under color of official right, as referenced PX 13 - ECMC Letter to Allegis Group, unlawful tax refund seizure, as referenced PX 19 - IRS - Notice of 2020 Tax Refund Seizure, and where the Defendants and their group associates committed obstruction during an official proceeding, witness tampering and evidence tampering to deny me lawful transfer of property upon a jury's findings from a civil rights jury trial I lawfully attempted to prosecute but was unlawfully denied the opportunity, as referenced PX 25 - 316-cv-00019 - PHEAA ECMC Documents, PX 26 - 316-cv-00019 - Gregory F Van Tatenhove Documents & PX 31 - 316-cv-00019 - Appellate Court Rulings. I seek redress through Federal civil court as permitted under law.

PARTIES

6.    Michael T. Lewis (henceforth also referred to as "Plaintiff") is a resident of the Eastern Federal District of the Commonwealth of Kentucky. As the submitted evidence and my testimony establishes, I am witness to the criminal Enterprises existence that the Defendants and their associates directly or indirectly conduct business for or participate in. I am also a victim of and have suffered property loss and personal injury as a direct or proximal result of, by reason of and because of the Defendants and their associates human trafficking, collection on an unlawful debt and pattern of racketeering activities.

7.    PHEAA is a corporate entity, corporate person, and a group associate of the criminal Enterprise. PHEAA's headquarters is located at 1200 North 7th Street

Harrisburg, PA 17102. PHEAA. PHEAA is not a congressionally defined governmental unit or non-profit institute of higher education for bankruptcy purposes. PHEAA and its associates transact their affairs in the Commonwealth of Kentucky, in the Commonwealth of Pennsylvania and for the Federal Governments. At all times PHEAA, its employees, agents, and other enterprise group associates, through creation of documentary materials, committed acts on behalf of the Enterprise and pursuant to the customs, policies, practices, or procedures of the Enterprise. The Enterprise that PHEAA is associated with and knowingly conspires with, conducts business for and participates in with Nelnet, ECMC, The Department of Education and Gregory F. Van Tatenhove and knowingly conspires with, conducts business for or participates in through its employee associates, Casey Clark and Todd E. Mosko, and other enterprise group associates targeted me and caused me property loss as a direct or proximal result of, by reason of and because of them adversely affecting interstate commerce, trafficking in me, creation and collection on an unlawful debt and usury interest and by means of a pattern of racketeering activities.

8.     ECMC Group is a corporate entity, part of a group of corporate associates, corporate person, and a group associate of the criminal Enterprise. ECMC Group headquarters is located at 111 Washington Avenue South Suite 1400 Minneapolis, MN 55401. ECMC and is not a congressionally defined governmental unit or non-profit institute of higher education for bankruptcy purposes. ECMC Group and its group associates transact their affairs in the Commonwealth of Kentucky. At all times ECMC, its employees, agents and other enterprise group associates acted, through creation of documentary materials, on behalf of the enterprise and pursuant to the customs, policies, practices, or procedures of the Enterprise. The Enterprise that ECMC is associated with and knowingly conspires with, conducts business for and participates in with Nelnet, PHEAA, The Department of Education and Gregory F. Van Tatenhove and knowingly conspires with, conducts business for and participates in through its employees associates, Connie Collins, Jennifer Skerbinc, Diane Zitur, unknown employees and other enterprise group associates targeted me and caused me property loss as a direct or proximal result of, by reason of and because of them adversely affecting interstate commerce, trafficking in me, creation and collection on an unlawful debt and usury interest and by means of a pattern of racketeering activities.

## GROUP ASSOCIATES, CONSPIRING ASSOCIATES AND AIDING AND ABETTING HUMAN TRAFFICING ASSOCIATES OF THE DEFENDANTS

9.    Nelnet is a corporate entity, corporate person, and a group associate of the criminal enterprise. Nelnet is not a congressionally defined governmental unit or non-profit institute of higher education for bankruptcy purposes. The Enterprise that Nelnet knowingly conspires with, conducts business for and participates in with ECMC, PHEAA, The Department of Education and Gregory F. Van Tatenhove and knowingly conspires with, conducts business for and participates in through its employee and group associate Jack A. Simmons targeted me and caused me property loss as a direct or proximal result of, by reason of and because of them adversely affecting interstate commerce, trafficking in me, creation and collection on an unlawful debt and usury interest and by means of a pattern of racketeering activities.

10.    Jack A. Simmons is a person that is employed by Nelnet and a group associate of the enterprise money lending and servicing business. The Enterprise Nelnet knowingly conspires with, conducts business for and participation in, through its employee Jack A. Simmons targeted me and caused me property loss by adversely affecting interstate commerce, trafficking in me, collection on an unlawful debt and usury interest and did so by means of a pattern of racketeering activities.

11.    Casey Clark is a person that is employed by PHEAA and is a group associate of the enterprise money lending and servicing business. The Enterprise PHEAA knowingly conspires with, conducts business for and participation in through its employee Casey Clark targeted me and caused me property loss by adversely affecting interstate commerce, trafficking in me, collection on an unlawful debt and usury interest and did so by means of a pattern of racketeering activities.

12.    Todd E. Mosko is a person that is employed by PHEAA and is a group associate of the enterprise money lending and servicing business. The Enterprise PHEAA knowingly conspires with, conducts business for and participation in, through its employee Todd E. Mosko targeted me and caused me property loss by adversely affecting interstate commerce, trafficking in me, collection on an unlawful debt and usury interest and did so by means of a pattern of racketeering activities.

13.    Robert Linneman is a person that is employed by or is an agent of PHEAA and is a group associate of the enterprise money lending and servicing business. The Enterprise PHEAA knowingly conspires with, conducts business for and

participation in through its agent Robert Lineman targeted me and caused me property loss by adversely affecting interstate commerce, trafficking in me, collection on an unlawful debt and usury interest and did so by means of a pattern of racketeering activities.

14.    Connie Collins is a person that is employed by ECMC and is a group associate of the enterprise money lending and servicing business. The Enterprise ECMC knowingly conspires with, conducts business for and participation in through its employee Connie Collin targeted me and caused me property loss by adversely affecting interstate commerce, trafficking in me, collection on an unlawful debt and usury interest and did so by means of a pattern of racketeering activities.

15.    Jennifer Skerbinc is a person that is employed by ECMC and is a group associate of the enterprise money lending and servicing business. The Enterprise ECMC knowingly conspires with, conducts business for and participation in through its employee Jennifer Skerbinc targeted me and caused me property loss by adversely affecting interstate commerce, trafficking in me, collection on an unlawful debt and usury interest and did so by means of a pattern of racketeering activities.

16.    Diane Zitur is a person that is employed by ECMC and is a group associate of the enterprise money lending and servicing business. The Enterprise ECMC knowingly conspires with, conducts business for and participation in through its employee Diane Zitur targeted me and caused me property loss by adversely affecting interstate commerce, trafficking in me, collection on an unlawful debt and usury interest and did so by means of a pattern of racketeering activities.

17.    Edward M. King and A.L. Brown are persons that are employed by or are agents of ECMC and are group associates of the enterprise money lending and servicing business. The Enterprise ECMC knowingly conspires with, conducts business for and participation in through its agents Edward M. King and A.L. targeted me and caused me property loss by adversely affecting interstate commerce, trafficking in me, collection on an unlawful debt and usury interest and did so by means of a pattern of racketeering activities.

18.    The Department of Education is a governmental unit and a group associate entity of the enterprise money lending and servicing business. The Department of Education is associated with the Defendants through contracts, governance and transacts affairs through its employees in the Commonwealth of Kentucky. The Enterprise that The Department of Education conspires with, conducts business for

and participation in with Nelnet, PHEAA, ECMC and Gregory F. Van Tatenhove and conducts business for and participates in through its employees, Michael S. Taylor, V. Wilson and Lora Brown, and other enterprise group associates targeted me and caused me property loss by adversely affecting interstate commerce, trafficking in me, collection on an unlawful debt and usury interest and did so by means of a pattern of racketeering activities.

19.    V. Wilson is a person that is employed by The Department of Education and is a group associate of the enterprise money lending and servicing business. The Enterprise that The Department of Education knowingly conspires with, conducts business for and participation in through its employee V. Wilson targeted me and caused me property loss by adversely affecting interstate commerce, trafficking in me, collection on an unlawful debt and usury interest and did so by means of a pattern of racketeering activities.

20.    Lora Brown is a person that is employed by The Department of Education and is a group associate of the enterprise money lending and servicing business. The Enterprise The Department of Education knowingly conspires with, conducts business for and participation in through its employee Lora Brown's targeted me and caused me property loss by adversely affecting interstate commerce, trafficking in me, collection on an unlawful debt and usury interest and did so by means of a pattern of racketeering activities.

21.    Gregory F. Van Tatenhove is a person that is employed by The Federal government and is a group associate of the enterprise money lending and servicing business. The Enterprise that Gregory F. Van Tatenhove knowingly conspires with, conducts business for and participation in with Nelnet, PHEAA, ECMC, the Department of Education targeted me and caused me property loss by adversely affecting interstate commerce, trafficking in me, collection on an unlawful debt and usury interest and did so by means of a pattern of racketeering activities.

22.    Michael S. Taylor is a person that is employed by The Department of Education and is a group associate of the enterprise money lending and servicing business. The Enterprise Michael S. Taylor knowingly conspires with, conducts business for and participation in targeted me and caused me property loss by adversely affecting interstate commerce, trafficking in me, collection on an unlawful debt and usury interest and did so by means of a pattern of racketeering activities.

23.    Any other unknown entity, natural person or corporate person that is

employed by or is associated with the criminal Enterprise in any manner and at any time and that may be subsequently discoverable or discovered.

## JURISDICTION AND VENUE

24.    Pursuant to 28 U.S.C. § 1331, jurisdiction of this Court is proper for the Defendants violations arising under statutes 18 U.S.C. §§ 1961-68 ("RICO ACT") - Racketeer Influenced and Corrupt Organizations Act, & 18 U.S.C. § 1581-1592 - peonage, slavery, and trafficking in persons. Federal laws create the causes of action in this case and the evidence establishes that the Defendants have commonly participated in and conducted their affairs in the Federal Eastern District of the Commonwealth of Kentucky.

25.    Pursuant to 28 U.S.C. § 1367 – Supplemental Jurisdiction applies for any relevant and possible joinder or intervention of additional parties.

26.    Pursuant to 28 U.S.C. § 1391(b)(2) or (3) venue is proper in this district because the plaintiff resides in this 6th Circuit Federal court District, the Defendants have transacted [their] affairs in this district, and sufficient human trafficking, collection on an unlawful debt, racketeering predicate or overt acts, misrepresentations and omissions giving rise to the allegations herein occurred in this district.

27.    Pursuant to 18 U.S.C § 1596 - Jurisdiction is also proper for allegations related to and arising under 18 U.S.C. § 1595 - Civil Remedy in this complaint.

28.    Pursuant to 18 U.S.C. § 1965 –Venue is proper where the Defendants have "transacted [their] affairs" in the 6th Circuit Federal Court District.

29.    Pursuant to Fed.R.Civ.P. 20 the Defendants are enjoined.

## GENERAL FACTS COMMON TO THE CASE

30.    For context and to establish overall relevance, the evidence establishes that enterprise group associates, which includes Federal Government employed persons, subverted, and infiltrated the Defendants corporations and their group associate Federal Government regulated money lending and loan servicing business, which includes guaranteeing Federal Family Education Loans (Henceforth also referred to as "FFEL") when they are discharged during a bankruptcy. These enterprise group associates, which would otherwise be considered and what gives the appearance of legitimate corporate entities, corporate persons and natural persons is commonly referred to as a front for organized crime. These infiltrating enterprise group associates directly or indirectly oversee and provide services for the FFEL bank originated private loan program, which includes bankruptcy representation, being

owed for student loans, collecting on student loans, and guaranteeing FFEL student loans that are guaranteed by Federal government funds through Federally contracted guarantors. The evidence establishes that these enterprise group associates subversion of the FFEL guarantee loan program and its purpose, as referenced PX 38 - Federal Regulations - FFEL Program, occurred sometime after my FFEL private loan was lawfully discharged during a chapter seven bankruptcy and prior to or at the time of Nelnet's filing of a false claim and shortly thereafter PHEAA's filing of an amended false claim in a subsequent chapter thirteen bankruptcy, that I had filed many years later. The submitted and documented chapter 7 bankruptcy case evidence, as referenced PX 2 through PX 7, is documented corroborating evidence that establishes that the Defendants and their group associates had direct, imputed or collective knowledge of the proper bankruptcy claims procedures, relevant regulations and bankruptcy statues, that the student loan bankruptcy discharge exemption and its related undue hardship determination did not apply to my loan at the time of the discharge and that their bankruptcy claims they had subsequently filed in a different bankruptcy case were false claims for money laundering purposes, acts of perjury, as defined in the claims document itself, subornation of Nelnet's bankruptcy claims perjury, fraud, fraud upon the court and the first attempt by enterprise group associates to traffic in me.

31.   For clarity and simply, the current evidence establishes that although the enterprise functions as a collective group of associates, Nelnet forms the top level of the associates hierarchy whose initial unlawful function and purpose was to receive Federally funded loan servicing benefits by not acknowledging my student loan as discharged, create an unlawful debt and usurious interest to collect on by filing the first false bankruptcy claim, secure criminally derived property from me and laundering the proceeds through Nelnet. All other enterprise group associates form the enterprise enforcers, in various managerial or operational roles for the criminal enterprise whose purpose, in relation to the unlawful debt and usurious interest created by Nelnet, was and is to secure criminally derived property from me by directly or indirectly conducting or participating in human trafficking, collecting on the unlawful enterprise associate created debt and usurious interest and to do so by means of a pattern of racketeering predicate activities, if necessary. In this case my lawful objections, persistent, although unsuccessful, challenges, due diligence, and will, for myself and other Federal program participants, not to be trafficked in

and enslaved by the organized crime enterprise group associates has necessitated that the enterprise group associate enforcers have had to commit multiple and a pattern of human trafficking and other predicate acts over a 7-to-8-year period of time to further the enterprises criminal functions and pecuniary purposes, in this case. These are unlawful predicate acts which continues to this day where there is no evidence that the Defendants or their group associates have withdrawn, completed or abandon the enterprises criminal purposes, which would require affirmation of wrongdoing and admission to or conviction for the specific overt predicate acts, and where there is submitted documented evidence establishing that a Department of Education employed enterprise group associate attempted to traffic in me, tampered with me as a witness, tampered with the evidence and has made documented effort to further conceal and continue the enterprises human trafficking and other criminal purposes into the future, as recently as November 2021, as referenced PX 37 - Dept of Ed - Michael S. Taylor Document.

32.   For clarity and simply, in addition to the submitted documented evidence statements and activates establishing the Defendants and their associates direct or indirect knowledge, imputed knowledge, collective knowledge, intent, motives or willingness to commit wrongdoing, the enterprise associates knowledge, intent, motives and willingness to commit wrongdoing is also established by the Defendants and their group associates deliberate ignorance and unwillingness to acknowledge any well documented statutory or other common law, the documented facts of this case, U.S. Supreme Court precedence, congressional intent, congressional definitions, federal regulations and Federal court processes that could lead to the reporting and investigation into the unlawful activities of the enterprise group associates or that the Defendants and their associates deliberate ignorance and unwillingness to acknowledge the well documented statutory or other common law, facts, U.S. Supreme Court precedence, congressional intent, congressional definitions, federal regulations, and Federal court processes conceals, perpetrates, or furthers the human trafficking and pecuniary purposes of the enterprise. Simply, it is the Defendants and their group associates practice to deliberately ignore all facts, statutory law, statutory definitions, congressional intent, or other common law to achieve the enterprises' unlawful functions and purposes. When confronted, multiple documented times by me, with relevant facts and laws that are averse to the enterprise scheme and plan in this case, as referenced PX 30 - 316-cv-00019 -

My Civil Rights Case Documents, the Defendants and their group associates still chose to conceal and commit or conspire to commit criminal predicate acts to facilitate, aid and abet the criminal enterprise's unlawful function and purpose, as referenced PX 25 through PX 26.

33. For clarity and simply, in the submitted documented evidence, the enterprise group associates reference their self-created student loan exemption policy that exempts all student loans or student loan obligations from bankruptcy discharge and proliferates and applies their undue hardship determination process that pertains to and is required, in their personal judgment, for all instances were a debtor is attempting to discharge their student loans. The enterprise group associates successfully executed their enterprise bankruptcy student loan exemption policy and undue hardship determination process, that are unlawful misrepresentations, false statements, omit facts, abusive of the underlying statutes, coercive and deceiving facsimiles of the lawful congressional policies and processes, in this case. The enterprises group associate's documented student loan exemption policy and undue hardship determination process should not be confused with congresses bankruptcy student loan exemption statutory law and related undue hardship determination processes that the enterprise associates abuse. Where congress under statute 11 U.S.C § 523 does not apply the exemption statute and related undue hardship determination to all student loan or obligations and makes the student loan discharge statute exemption and the related undue hardship determination applicable only to student loans or student loan obligations owing to a governmental unit or non-profit institution of higher education, where the statute clearly and unambiguously states, as referenced, PX 17 - Federal Statutes - 11 U.S.C § 523 - Legislative Statements, "Section 523(a)(8) represents a compromise between the House bill and the Senate amendment regarding educational loans. This provision is broader than current law which is limited to federally insured loans. Only educational loans owing to a governmental unit, or a nonprofit institution of higher education are made nondischargeable under this paragraph." and student loans and student loan obligations that have been owing and due for an amount of time less than 5 years, as referenced, PX 17 - Federal Statutes - 11 U.S.C § 523 - Senate Report No. 95–989, where the statute clearly and unambiguously states: "This section specifies which of the debtor's debts are not discharged in a bankruptcy case, and certain procedures for effectuating the section. .... Paragraph (8) follows generally current law and excerpts from discharge student loans until such loans

have been due and owing for five years. Such loans include direct student loans as well as insured and guaranteed loans." Notably, congress clearly states: "Senate Report" and "Legislative Statements" and not subjective suggestions. This congressional report, legislative statements and clear statute application intent, verbatim, which are not my personal judgments or opinions but is simply the unadulterated statutory and common law, were in effect and documented in statue 11 U.S.C § 523 at the time of my FFEL student loan discharge and notably when the U.S. Supreme court gave recognition to the related Brunner undue hardship test, where the congressional statements and documented congressional intent for the application of the statute excluded my FFEL loan from being subject to the statues discharge exemption and its corresponding undue hardship determination, because my consolidated FFEL private loan was not owing to a governmental unit or non-profit institute of higher education at the time of discharge, as referenced PX 15 - NELNET - Financial Statement & PX 14 - PHEAA - Financial Statement 2005_2006, and it had been owing and due for longer than 5 years, as referenced by the Defendants own submitted evidence PX 8 - 12-13217-JKC-13 - ECMC's Response to Debtor's Objection to Claim No. 1 - Application / Promissory Note, at the time of my loan discharge, as referenced PX 4 - 05-26202-JKC-7A - Discharge of Debtor. Notably and for future reference, when PHEAA and ECMC were knowingly committing predicate criminal acts to gain a fraudulent court order to create the unlawful debt and usurious interest, traffic in me and for money laundering and tax evasion purposes, ECMC, who knew their conspiring activities were unlawful acts, as referenced PX 21 - 96-05903-A7 - In Re Bernal, by unlawfully accepting transfer of the discharged loan, as referenced PX 22 - ECMC - Connie Collins Document, was also not a governmental unit or non-profit institute of higher education at the time of the official proceedings, as referenced PX 16 - ECMC - Financial Statement 2013, but coerced the judge to commit unlawful acts through filing fraudulent documentation, making false statements, committing fraud upon the court and allowed the court to believe, as officers of the court, that their actions were lawful. Along with the evidence establishing that the Defendants and their group associates abuse statute 11 U.S.C § 523(a)(8) exemption, statute 11 U.S.C § 524 protections and statute 11 U.S.C § 350 process for human trafficking and pecuniary purposes, this Complaint lists, infra, multiple documented examples, that form a pattern of the enterprises group associates practice of implementing their own unlawful policies and processes to coercively abuse Federal crime statutes and

Federal processes by means of overt predicate criminal racketeering activities to create, propagate and collect on an unlawful debt and usurious interest.

34.   Simply, there is and was an obligation to follow what congress specifically says, the protections they bestow, and the processes they create and there is and was no obligation to follow the personal judgments, false statements, policies, practices, and procedures created by the Defendants and their organized crime group associates. A fact and circumstance supported by a preponderance of the submitted evidence and by the U.S. Supreme Court when they stated in relevant part in U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842---43 (1984): ("If the intent of Congress is clear, that is the end of the matter: for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.") See also, Nat'l Cotton Council of Am. v. U.S. EPA, 553 F.3d 927, 933 (6th Cir. 2009)). The evidence establishes that the Defendants and their group associates when given a choice, always followed a path of crime for profit instead of following the law.

35.   Even more simply, the civil jurists will be able to weigh, by a preponderance of the evidence, congresses documented, within the statutes themselves, intent, statement, and report, verbatim, for the exemption application of statute 11 U.S.C § 523(a)(8), bankruptcy protections under statute 11 U.S.C § 524 and bankruptcy due processes under statute 11 U.S.C § 350, as referenced PX 17, PX 18 and PX 34, versus the documented personal judgments, deliberate ignorance, misrepresentations, false statements, omissions, abuse of laws, abuse of processes, human trafficking, and other unlawful overt and predicate acts of the Defendants and their group associates, that usurps congresses constitutional authority, to perpetrate the criminal enterprises unlawful functions, purposes, human trafficking, collections on an unlawful debt and usurious interest, pattern of racketeering activities and civil and constitutional rights violations. Then weigh the evidence accordingly and apply the facts, evidence and circumstances to the elements needed for proof of the underlying predicate offenses.

## RELAVENT EVIDENCE, FACTS, PREDICATE ACTS, OVERT ACTS AND MY TESTIMONY (Not all inclusive)

36.   The evidence establishes, as referenced, PX 10 - 12-13217-JKC-13 - Nelnet claim, that on April 12, 2013, knowingly in disregard to the a prior bankruptcy discharge order under case number 05-26202-JKC-7A, under color of official right, under the penalty of perjury and to unlawfully abuse a bankruptcy claims process, group associate Jack A. Simmons, Bankruptcy Coordinator for Nelnet, filed a false

claim, on behalf of Nelnet and the Enterprise, in my chapter 13 bankruptcy, case number 12-13217-JKC-13, in the amount of $38,510.59. The submitted Nelnet claim was created, on or around April 12, 2013, and was created by the 7th Circuit Federal bankruptcy court Clerk on behalf of Nelnet. Originator and signatory are under penalty of perjury and is named Jack A. Simmons. The Document is discoverable under the 7th Circuit Federal bankruptcy under number 12-13217-JKC-13 claims. The document verifies the name of the Enterprises intended racketeering and trafficking victim as Michael T. Lewis and specifies the case number, in which it was filed, as 12-13217-JKC-13. The document specifies the amount of the claim as of the date the case was filed as, $38,510.59. It states the basis for the claim to be a "Student Loan Obligation". It also states "I (Jack A. Simons) am the creditor's authorized agent" and lists the documents attached to include, Document loan Summary, Borrowers Certification, Additional Terms of the Promissory Note for a Consolidation Loan and FFEL Consolidation Program Application / Promissory Note. This documented bankruptcy claim evidence establishes that Jack A. Simons was abusing a federal bankruptcy claims process, abusing federal bankruptcy laws, and committing unlawful acts of coercion by means of perjury, making a materially false statement that I was owing Nelnet or someone they represented on a debt and that a debt, that I was owing, existed in the amount of $38,510.59. The document omits that a discharge order discharged me from the debt I was once owing to Nelnet, PHEAA or a bank, the fact that Nelnet on behalf of PHEAA or a bank had already filed a claim on the now discharged debt I had owed them, that the debt, relevant to the bankruptcy estate had been settled, the fact that Nelnet had received a distribution from the estate to satisfy that debt, that no money remained in the chapter 7 estate for distribution and that the debt that I once was owing them had become an unlawful debts protected from collections under federal civil and crime statutes by court judgment through a discharge order.

37.     The evidence establishes, as referenced PX 11 - 12-13217-JKC-13 - PHEAA Amended claim, that on or around May 30, 2013, in association and conspiracy with Nelnet, the Defendants associate PHEAA's employee Casey Clark, Manager for PHEAA, filed an amended false claim, on behalf of the PHEAA and the Enterprise, on the unlawful debt first created by Nelnet in the amount of $38,510.59. The amended claim was created on or around May 30, 2013, by the 7th Circuit Federal bankruptcy court Clerk on behalf of PHEAA. Originator and signatory under penalty of perjury, is Casey Clark who is a manager of PHEAA. The

document is discoverable at the 7th Circuit Federal bankruptcy court under case number 12-13217-JKC-13 Claims. The claim lists the basis for the claim as "Student Loan" and stated that "I (Casey Clark) am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)" The documents attached includes the borrower history. The evidence establishes Casey Clark was abusing a federal bankruptcy claims process, abusing federal bankruptcy laws, and committing unlawful acts of coercion by means of perjury, making materially false statements that I was owing PHEAA on a debt and that a debt existed in the amount of $38,510.59. The document omits that a discharge order discharged me from the debt I had been owing to Nelnet, PHEAA or a bank, the fact that Nelnet on behalf of PHEAA or a bank had already filed an claim on the debt I was owing them, that the debt, relevant to the estate had been settled, the fact that Nelnet had received a distribution from the estate to satisfy the debt, that no money remained in the chapter 7 estate for distribution and that the debt that I once was owing them had become an unlawful debts protected from collections under federal civil and crime statutes by court judgment through a discharge order.

38.    The evidence establishes, as referenced PX 20 - 12-13217-JKC-13 - PHEAA-ECMC Transfer Doc 3, that on or around July 11, 2013 "Nelnet on behalf of PHEAA" received notice of the transfer of the unlawful debt between PHEAA and ECMC but failed to act accordingly with knowledge that the debt they had created with PHEAA was an unlawful debt. This document circumstantially establishing a formation and continuation of Nelnet and PHEAA's scheme, plan, and conspiracy. The document is discoverable at the 7th Circuit Federal bankruptcy court under case number 12-13217-JKC-13

39.    The evidence establishes, as referenced PX 20 - 12-13217-JKC-13 - PHEAA-ECMC Transfer & PX 24 - PHEAA - Todd Mosko Document, on or around July 11, 2013, and in conspiracy with associates Nelnet, PHEAA and ECMC to traffic in me and collect on an unlawful debt from me, Todd E. Mosko, at the time of the criminal offenses referred to himself as Vice President of Loan Assets Management for PHEAA abused a bankruptcy process by reporting through a court filing that PHEAA's interest and rights to the enterprise created debt and usurious interest had been transferred to ECMC. Todd Mosko's document was created at 16:23:50 8/22/2013. It was created by the 7th Circuit Court Clerk on behalf of Todd Mosko PHEAA VP Loan Asset Management and is discoverable under the 7th Circuit Bankruptcy case 12-13217-JKC-13. In relevant part the document verifies, along

with other relevant facts and statements, that "The Pennsylvania Higher Education Assistance Agency (PHEAA) herby assigns to the Educational Management Corporation (ECMC) its rights, title and interest in these student loans listed in the enclosure to this letter." The document omits that my debt to Nelnet, PHEAA or a bank had already been discharged in a bankruptcy and that as guarantor PHEAA had a fiduciary and regulatory duty to honor the Federal loan guarantee upon my FFEL loan bankruptcy discharge.

40.     The evidence establishes, as referenced PX 20 - 12-13217-JKC-13 - PHEAA-ECMC Transfer & PX 22 - ECMC - Connie Collins Document, on or around July 11, 2013, and in conspiracy with Nelnet and PHEAA, to traffic in me, collect on an unlawful debt and usurious interest from me and abuse a bankruptcy process, Connie Collins, at the time of the criminal offenses referred to herself as a Bankruptcy Representative for ECMC. Reported through a court filing that ECMC "accepted assignment of the student loan included in the proof of claim" from PHEAA contrary to bankruptcy law protections on the discharged debts and with full knowledge that ECMC could not lawfully accept assignment of the discharged debt or collect on the unlawful debt based on the ECMC's knowledge gained from bankruptcy case in Re Bernal, as referenced, PX 21 - 96-05903-A7 - In Re Bernal. As referenced PX 22 - ECMC - Connie Collins Document was created approximately July 11, 2013, by the 7th Circuit Court Clerk on behalf of Connie Collins with the document originated by Connie Collins. The document is discoverable at the 7th Circuit Bankruptcy Court Case Number: 12-13217-JKC-13 Doc 55-1. The document verifies, along with other relevant facts by stating that "Educational Credit Management Corporation (ECMC), the "Transferee," does hereby give notice to the court that it has accepted assignment of the student loan(S) included in the proof of claim for the above-referenced debtor filed by Pennsylvania Higher Educ Asst Agency." Not all inclusive, the document falsely states that a debt existed in the amount of $38,510.59. The document omits that the acceptance of the transfer of the discharged debt was a knowingly unlawful act in accordance with the findings against ECMC the In Re Bernal case.

41.     The evidence establishes, as referenced: PX 8 - 12-13217-JKC-13 - ECMC's RESPONSE TO DEBTOR'S OBJECTION TO CLAIM NO. 1, that on August 22, 2013, Edward M. King filed a rely to my objection to their claim. This document was created by 7th Circuit Federal bankruptcy court Clerk on behalf ECMC's representing agent Edward M. King and was intended for and is discoverable at

under the 7th Circuit Federal bankruptcy case number 12-13217-JKC-13. The bankruptcy reply evidence establishes and verifies that Edward M. King furthered a scheme and plan to traffic in me by means of abuse of laws, abuse of bankruptcy process or coercion, by documenting and committing negligent, wrongful, or intentional acts or omissions of laws and facts to gain a fraudulent monetary instrument in the form of a court order. This was accomplished, by means of conducting and participating in fraud, fraud upon the court, suborning perjury and making the materially false statement that "Debtor's student loan debt owed to ECMC was not discharged through his 2005 Bankruptcy" and goes on abusing laws to justify the statement. The document also falsely states, "Therefore, Debtor's objection offers no factual evidence and or legal theory to justify disallowing ECMC's Claim." Notably, the evidence documents that ECMC had knowledge that it is a "private corporation" and not a governmental unit or non-profit institute of higher education, where debts owing to them are not subject to statute 11 U.S.C § 523(a)(8) and that Nelnet, PHEAA and ECMC intended to collect principal and interest, in the amount of $38,510.59, at a usurious rate on debts that Nelnet, PHEAA and ECMC knew had been discharged prior to their claims filings. Among other relevant facts the evidence documents ECMC acknowledgment that I had filed a prior Chapter 7 Bankruptcy, I was filing a subsequent Chapter 13 Bankruptcy and that Nelnet, "as the Lender" filed the original false claim, prior to PHEAA's amended claim. The evidence also documents that ECMC gave recognition and acknowledged that a legal process had been abused, by stating "by extending the bar date," which had allowed PHEAA to file the false amended claim.

42.    The evidence establishes, as referenced PX 12 - 12-13217-JKC-13 - Order on Objection, which was created at 10:36:00 on 10-24-2013. The document was created by the 7th Circuit Federal bankruptcy court Clerk on behalf of Judge James K. Coachys and Edward King, which awarded ECMC an unlawful and coercive monetary instrument, in the form of a court order, under case 12-13217-JKC-13. The document is discoverable at the 7th Circuit Federal bankruptcy court under case number 12-13217-JKC-13. Judge James K. Coachys in continuation of the scheme and in accordance with the plan, committed negligent, wrongful, or intentional acts or omissions of laws and facts to commit, conceal and further the criminal enterprise pecuniary purposes and to traffic in me. To do so, not all inclusive and as an example he made the materially false statement that "5. Pursuant to section 523(a)(8) of the Bankruptcy Code the Student Loan Debt was not discharged by the

2005 Discharge." Notably, this evidence of a false statement establishes that the Defendants were successful in obtaining me or providing me as a trafficking victim for the Enterprise and placing me into a condition of peonage or debt bondage by means of abuse of laws, legal processes, or coercion and against my will.

43.   I testify on or around March 16, 2015, approximately two years later, I started receiving letters in the mail falsely stating that I had a student loan in default and that I started receiving phone calls from ECMC employees falsely stating that student loans are not dischargeable under bankruptcies.

44.   The evidence establishes, as referenced PX 27 - Dept of Ed - V Wilson Document, on or around July 20, 2015, and in conspiracy with the Defendants and on behalf of the criminal Enterprise, V. Wilson at the time of the criminally negligent offenses, under color of official right and law, referred to as being the Hearing Officer for the Business Operations, Hearings & Interagency Appeals Branch for the Department of Education. V. Wilson without jurisdictional, statutory, discretionary, or regulatory authority and in continuation of the scheme and in accordance with the plan, committed negligent, wrongful, or intentional acts or omissions of laws and facts to commit, conceal and further the criminal enterprise pecuniary purposes and to traffic in me. To do so, not all inclusive and as an example V. Wilson made the materially false statement that "Guaranteed Student Loans are governed by 11 U.S.C. 523(a)(8) and the Reauthorization Act of 1998. The Reauthorization Act states that in any bankruptcy petition filed on or after October 8, 1998, student loans are not dischargeable unless the Courts specifically grants a discharge due to undue hardship in a separate Adversary Proceeding. The above-referenced loans were not discharged in bankruptcy."

45.   The evidence establishes, as referenced PX 13 - ECMC Letter to Allegis Group, on August 11, 2015, my employer Allegis Group received, through the mail, an Order of Withholdings from earnings from the Defendant associate ECMC, acting under color of official right and on behalf of the Enterprise. The evidence establishes that this letter was not a court order but simulated one. The document abused laws by citing (20 U.S.C. 1095a: 34 C.F.R. §§ 682.410(b) (6) (VI), 682.410(b) (9)) as ECMC's under color of official right authority to have my wages garnished. The document also abused laws by citing 20 U.S.C. § 1095a (a) (6): 34 C.F.R. § 682.410(b)(9)(P) and under color of official right threatened my employer Allegis Group with legal process if they did not comply with their extortion demands. Not all inclusive, the evidence establishes that the document omits the

bankruptcy discharge order that ECMC was bound by and that made the debt uncollectable. Not all inclusive, the letter makes the false statements that my employer was required to withhold 15% of my discretionary income and that there was a current balance on a student loan owing to them by me in the amount of $58,230.45. Notably, the extortion document listed an ECMC address to send the extortion payments to but was unsigned.

46.   The evidence establishes, as referenced PX 32 - Michael T Lewis - Garnished Wages, on or around March 23, 2015, my employer, Allegis Group, complied with the Enterprises extortion demands and started garnishment of my wages. This was the point that the Defendants, under color of official right and on behalf of the criminal Enterprise, started laundering monetary instruments and avoiding paying tax on ill-gotten financial gains from the human trafficking and pattern of racketeering activities over the course of twenty-nine separate mail or wire transfers. I sustained property damage as a direct or proximal result of, by reason of and because of the Enterprises extortion, loansharking, human trafficking, collection on an unlawful debt and pattern of racketeering activities, in a time span ranging from August 20, 2015, to March 17th, 2016. The total amount of my property damage (loss) was ~$4733.98.

47.   The evidence establishes, as referenced PX 29 - ECMC - Diane Zitur Documents, that on or around September 22, 2015, and in conspiracy with the Defendants and on behalf of the criminal Enterprise, Diane Zitur, at the time of the criminal offense, referred herself as being the Ombudsman manager for ECMC, sent through the mail documents consisting of negligent, wrongful, or intentional acts or omissions of laws and facts and abused the wage garnishment proceeding in furtherance of the enterprises human trafficking, collection on an unlawful debt and committed a acts in furtherance of the enterprises pattern of racketeering activities.

48.   I testify that on or around November 25, 2015, I tried to get Allegis Group to stop the garnishing of my wages by engaging with Allegis Group garnishment administrator Ms. St. Croix. Allegis Group (Aerotek) apparently honored the discharge for 1 week. I concede that Allegis Group (Aerotek) and Ms. St. Croix are not principal parties to this Complaint but are deposable witnesses and victims of the Defendants and their group associates loansharking, extortion, and racketeering activities through use of mail or wire and by fear, coercion, or threats of legal process, under color of official right.

49.   The evidence establishes, as referenced PX 28 - Dept of Ed  - Lora Brown

Document, that on or around January 13, 2016 and in conspiracy with the Defendants and on behalf of the criminal Enterprise, Lora Brown at the time of the criminal offenses referred herself as being a Research Specialist for Department of Education and under color of official right committed negligent, wrongful, or intentional acts or omissions that was subsequently sent through by wire, that gave material aid and abetted the Enterprises human trafficking or racketeering activities. Not all inclusive, Lora Brown made the false statement that "For all bankruptcy petitions filed after October 7, 1998, federal student loans may be discharged in bankruptcy only if the bankruptcy court finds that repayment would impose undue hardship on a borrower and their dependents." Lora Brown unlawful activities were committed within the scope of the employment.

50.    The evidence establishes, as referenced PX 23 - ECMC - Jennifer Skerbinc Document, that on or around January 26, 2016, and in conspiracy with the Defendants and on behalf of the criminal Enterprise, Jennifer Skerbinc at the time of the criminal offenses referred himself as being a Litigation Specialist for ECMC created a document that committed negligent, wrongful, or intentional acts or omissions about laws and facts, that were subsequently sent through the mail, in furtherance of the Defendants human trafficking and racketeering activities. Not all inclusive, Jennifer Skerbinc made the false statement that "Student loans are nondischargeable through a bankruptcy case absent a ruling of undue hardship. In order to obtain such a ruling a separate adversary proceeding must be filed seeking the discharge of student loans. See 11 U.S. Code § 523(8)(a)."

51.    The evidence establishes, as referenced PX 30 - 316-cv-00019 - My Civil Rights Case Documents, that on March 9, 2016, I filed a civil rights Complaint in 6th Cir. District Court. I testify that on or around March 17, 2016, the Enterprises forced labor, loansharking, and extortion, under color of official right, temporarily stopped. This was the first affirmation of the Defendants wrongdoing but without confirmation as to the specific unlawful acts that it affirms had occurred.

52.    The evidence establishes, as referenced, PX 25- 316-cv-00019 - PHEAA ECMC Documents, that between April 11, 2016 to August 13th, 2020, the Defendants employees or agents, Edward M. King (ECMC), J. Robert Linneman(PHEAA), and A. L. Brown (ECMC), on behalf of the Enterprises, in continuation of the scheme and in accordance with the plan, committed negligent, wrongful, or intentional acts or omissions of laws and facts to commit, conceal and further the criminal enterprise purposes and to traffic in me. To do so, not all

inclusive and as examples they made materially false statements that "Because the Plaintiff's student loan debt could not have been discharged as alleged in his Complaint", "The Student Loans were not discharged through the Plaintiff's Chapter 7 Case because he did not commence an adversary proceeding to determine dischargeability." and "To discharge student loan debt in bankruptcy, one must receive a judgment of undue hardship in an adversary proceeding"

53.   The evidence establishes, as referenced PX 26 - 316-cv-00019 - Gregory F Van Tatenhove Documents, that between March 1, 2017, to May 4th, 2020, Gregory F. Van Tatenhove on behalf of the Enterprises, in continuation of the scheme and in accordance with the plan, committed negligent, wrongful, or intentional acts or omissions of laws and facts to conceal and attempt, conspire, aid, and abet and commit traffic in me and collections on and unlawful debt. To do so, not all inclusive and as an example he made the materially false statement that "In bankruptcy proceedings, outstanding student loans are not discharged unless an adversary proceeding is commenced to demonstrate that the loans impose an undue hardship. 11 U.S.C. § 523(a)(8): see also In re Cheesman, 25 F.3d 356 (6th Cir. 1994)." as he referenced, PX 1 - 93-5500 - In re Cheesman. The evidence establishes that Gregory F. Van Tatenhove's unlawful activities did not further any legitimate government interest, intent or function and only furthered the human trafficking, pecuniary interests, and purposes of the organized crime Enterprise.

54.   The evidence establishes, as referenced PX 19 - IRS - Notice of 2020 Tax Refund Seizure, that on or about February 20th, 2020, an unknown associate of the Defendants at the Department of Education and in conspiracy with the Defendants, on behalf of the criminal Enterprise unlawfully seized my federal tax return in the amount of ~$7284.00 as payment on the criminal enterprise created debt.

55.   I testify that on or around September 2021 Nelnet reported their created debt or my discharged debt was paid in full to a credit reporting agency. This was the second affirmation of the Defendants wrongdoing but again without confirmation as to the specific unlawful act that it affirms had occurred.

56.   The evidence establishes, as referenced, PX 37 - Dept of Ed -Michael S. Taylor Document was received by me from the Department of Education on December 2, 2021, through the mail. Michael S. Taylor on behalf of the Enterprises, in continuation of the scheme and in accordance with the plan, committed negligent, wrongful, or intentional acts or omissions of laws and facts to commit, conceal and further the criminal enterprise purposes and to attempt to traffic in me. To do so,

not all inclusive and as an example he made the materially false statement that "Under 11 U.S.C. § 523(a)(8) student loans are not discharged in bankruptcy unless the borrower met the undue hardship standard through a self-initiated adversary proceeding." Notably, although not correctly referencing the claim I had presented to the Department of Education, Michael S. Taylor, Acting Assistant General Counsel for the Department Claims Office, affirmed that wrongdoing by Department of Education employees, in the context of human trafficking and organized crime, had occurred by stating ""Because your claim accrued at the commencement of the wage garnishments in March of 2015, your claim is untimely and thus barred". This was the third affirmation of the Defendants wrongdoing but without confirmation as to the specific unlawful acts that it affirms had occurred.

57.   I testify that sometime after my correspondence with the Department of Education that requested that the ECMC reported debt be removed from my credit report. It was. This was the fourth affirmation of the Defendants wrongdoing but again without confirmation as to the specific overt acts that it affirms has occurred.

58.   On this date, as documented below, I file this consolidated complaint and concurrently filed and combined Memorandum of Law in Support of the Complaint and Human Trafficking and Rico Case Statement that lawfully demands civil recourse through Federal courts, by means of trial by jury.

## ALLEGATIONS FOR CIVIL RELIEF

59.   Allegation 1: 18 U.S.C. § 1590(a) Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor. The Defendants and the Defendants associates human trafficking activities are defined by statutes under 18 U.S.C. Chapter 77 - Peonage, Slavery, And Trafficking in Persons and is cognizable by the preponderance of evidence submitted in this case. The Defendants unlawful activities to obtain me or provide me for human trafficking are in violation and meet the elemental requirements of proof under statues 18 U.S.C. § 1590(a) Trafficking with respect to violations of 18 U.S.C. § 1581(a) Peonage or 18 U.S.C. § 1589 Forced Labor. Please note 18 U.S.C. § 1590(a) is also a listed Racketeering Predicate act and should be considered as a listed RICO predicate act as well.

60.   Allegation 2: 18 U.S.C. § 1594(a) Attempted Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor attempt. The Defendants and the Defendants associates attempted human trafficking activities are defined by statutes under 18 U.S.C. Chapter 77 - Peonage, Slavery, And Trafficking in Persons and is cognizable by a preponderance of evidence submitted in this case. These

unlawful activities to attempted are definable by, in violation of and meet the elemental requirements of proof under statues 18 U.S.C. § 1594(a) Trafficking attempt. Please note that 18 U.S.C. § 1594(a) is not a listed Racketeering Predicate.

61.    Allegation 3: 18 U.S.C. § 1594(b) Conspiring to Traffick with respect to peonage, slavery, involuntary servitude, or forced labor conspiracy. The Defendants and the Defendants associates, in conspiracy, human trafficking activities are defined by statutes under 18 U.S.C. Chapter 77 - Peonage, Slavery, And Trafficking in Persons and is cognizable by the preponderance of evidence submitted in this case. These unlawful, in conspiracy, activities are definable by, in violation of and meet the elemental requirements of proof under statues 18 U.S.C. § 1594(b) Trafficking Conspiracy. Please note that 18 U.S.C. § 1594(b) is not a listed Racketeering Predicate act.

62.    Allegation 4: 18 U.S.C. § 2 Aiding and Abetting Human Trafficking. The Defendants and the Defendants associates aiding and abetting human trafficking activities are defined by statue 18 U.S.C. § 2 – Aiding and Abetting and is cognizable by the preponderance of evidence submitted in this case. These unlawful aiding and abetting activities are definable by, in violation of and meet the elemental requirements of proof under statues 18 U.S.C. § 2 – Aiding and Abetting.

63.    Allegation 5: 18 U.S.C. § 1962(c) Conduct or Participate in an Enterprise. The Defendants and the Defendants associates directly or indirectly conducted or participated in the collection on an unlawful debt or committed a pattern of racketeering activities are defined by statutes under 18 U.S.C. § Chapter 96 - Racketeer Influenced and Corrupt Organization Act and are listed predicate acts in statute 18 U.S.C. § 1961 – Definitions and is cognizable by the preponderance of evidence submitted in this case. These unlawful racketeering activities are definable by, in violation of and meet the elemental requirements of proof under statues 18 U.S.C. § 1962(c) - Prohibited Activities.

64.    Allegation 6: 18 U.S.C. § 1962(d) Prohibited Activities Conspiracy to Violate Section 1962(c). The Defendants and the Defendants associates directly or indirectly conducting or participating in the collection on an unlawful debt or pattern of racketeering activities are defined by statutes under 18 U.S.C. § Chapter 96 - Racketeer Influenced and Corrupt Organization Act and are listed predicate acts in statute 18 U.S.C. § 1961 – Definitions and is cognizable by the preponderance of evidence submitted in this case. These unlawful racketeering activities are definable by, in violation of and meet the elemental requirements of

proof under statues 18 U.S.C. § 1962(d) - Prohibited Activities Conspiracy.

## RELAVENT HUMAN TRAFFICING AND OTHER PREDICATE RACKETEERING ACT STATUTES

65.   18 U.S.C. § 1581(a); 18 U.S.C. § 1589; 18 U.S.C § 1956(a)(1)(A)(i); 18 U.S.C. § 152(4); 18 U.S.C § 1956(a)(1)(A)(ii); 18 U.S.C § 1956(h); 18 U.S.C § 1951; 18 U.S.C § 894(a); 18 U.S.C. § 1512(b)(1) & (2); 18 U.S.C. § 1512(b)(3); U.S.C. § 1512(c)(1) & (2); 18 U.S.C. § 1341; 18 U.S.C. § 1343.

## JURY TRIAL DEMAND AND CLAIMS FOR RELIEF

WHEREFORE, Michael T. Lewis respectfully demands trial by jury and requests equally from the Defendant's any attorney fees, compensatory awards, and punitive awards as determined by a jury or as I respectfully request that the jury award, equally from the Defendants, any attorney fees and:

for allegation 1, compensatory damages in the amount of $12,017.98 and punitive damages in the amount of $85,000,000 for providing me or obtaining me for human trafficking or a greater punitive award determined by the jury that does not exceed the aggregated liquidated monetary value of the Defendants entities or corporate persons.

for allegation 2, compensatory damages in the amount of $12,017.98 and punitive damages in the amount of $85,000,000 for attempting to traffic in me or a greater punitive award determined by the jury that does not exceed the aggregated liquidated monetary value of the Defendants entities or corporate persons.

for allegation 3, compensatory damages in the amount of $12,017.98 and punitive damages in the amount of $85,000,000 for conspiring to traffic in me or a greater punitive award determined by the jury that does not exceed the aggregated liquidated monetary value of the Defendants entities or corporate persons.

for allegation 4, compensatory damages in the amount of $12,017.98 and punitive damages in the amount of $85,000,000 for aiding and abetting trafficking in me or a greater punitive award determined by the jury that does not exceed the aggregated liquidated monetary value of the Defendants entities or corporate persons.

for allegation 5, treble compensatory damages for the Defendants, on behalf of the criminal, collections on an unlawful debt or pattern of racketeering activities that was the reason for my property loss and damages. I request treble compensatory monetary damages in the amount of $14,201.94 which constitutes the amount of money the Defendants and their group associates extorted from me times 3. I request

treble compensatory monetary damages in the amount of $14,568.00 which constitutes a proportioned two-thirds of the amount of my property unlawfully seized though abuse of the Internal Revenues Tax process, times 3. I request treble compensatory monetary damages in the amount of $30,000,000 which constitutes an approximate 2/3 proportionate amount of property unlawfully denied me as a direct or proximal result of, by reason of and because of the Defendants, not all inclusive, human trafficking and racketeering activities involving the Defendants and their group associates fraud, fraud upon the court, threat, abuse of law, abuse of legal processes, unlawful force of perceived authority and unlawful legal coercion in my civil rights case I filed and attempted to prosecute, times 3.

for allegation 6, treble compensatory monetary damages in the amount of $14,201.94 which constitutes the amount of money the Defendants and their group associates extorted from me times 3. I request treble compensatory monetary damages in the amount of $14,568.00 which constitutes a proportioned two-thirds of the amount of my property unlawfully seized though abuse of the Internal Revenues Tax process, times 3. I request treble compensatory monetary damages in the amount of $30,000,000 which constitutes an approximate 2/3 proportionate amount of property unlawfully denied me as a direct or proximal result of, by reason of and because of the Defendants, not all inclusive, human trafficking and racketeering activities involving the Defendants and their group associates fraud, fraud upon the court, threat, abuse of law, abuse of legal processes, unlawful force of perceived authority and unlawful legal coercion in my civil rights case I filed and attempted to prosecute, times 3.

And any injunctive or other relief to deny the Defendants and their organized crime enterprise associates the ability to further abuse Federally funded programs and their participants, if lawful and feasible.

Subscribed and Sworn to this day May 9, 2022
and Respectfully Submitted by,

Michael T. Lewis, Pro Se,
s/Michael T. Lewis
616 Fallen Timber Road, New Castle, Ky 40050
Mtlewis2020@gmail.com   812-657-2605